UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAYCEE SMITH, individually;

      Plaintiff,

                                No.

-v-                                 Hon.

DAVID HANSBERRY, in his individual
capacity; BRYAN WATSON, in his
individual capacity; AMY MATELIC, in
her individual capacity; and
CITY OF DETROIT, a municipal
corporation; jointly and severally,

      Defendants.

_____

## **COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, KAYCEE SMITH, individually, by and

through his attorneys, MUELLER LAW FIRM, by WOLFGANG MUELLER, and

files his Complaint against the Defendants, DAVID HANSBERRY, in his

individual capacity; BRYAN WATSON, in his individual capacity; AMY

MATELIC, in her individual capacity; and the CITY OF DETROIT, a municipal

corporation; in this civil action, stating unto this Court as follows:

     1.    This is an action for damages brought pursuant to 42 U.S.C. §§1983

and 1998, and the 4th and 14th Amendments to the United States Constitution,

against Defendants, DAVID HANSBERRY ("HANSBERRY"), in his individual

capacity; BRYAN WATSON ("WATSON"), in his individual capacity; AMY

MATELIC ("HANSBERRY"), in her individual capacity; and the CITY OF

DETROIT ("DETROIT"), a municipal corporation.

2.     Jurisdiction is founded upon 28 U.S.C. §1331 and 28 U.S.C. §1343.

3.     Forum is proper based on the situs of the incident, which occurred in

the City of Detroit.

## GENERAL ALLEGATIONS

4.     At all pertinent times Plaintiff, KAYCEE SMITH, was a United States

citizen.

5.     At all pertinent times, Defendant, HANSBERRY, was employed as a

Sergeant by the Detroit Police Department ("DPD"), a department of DETROIT,

and was acting within the scope of his employment and under color of law.

6.     HANSBERRY, as a sworn police officer, had taken an oath, the Law

Enforcement Code of Ethics, that stated, in pertinent part: *"As a sworn police*

*officer, my fundamental duty is to serve the community; to safeguard lives and*

*property; to protect the innocent against deception, the weak against oppression or*

*intimidation and the peaceful against violence or disorder; and to respect the*

*constitutional rights of all to liberty, equality and justice."*

7.     At all pertinent times, Defendant, WATSON, was employed as a

police officer for the DPD, a department of DETROIT, and was acting within the

scope of his employment and under color of law.

8.      WATSON, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated, in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

9.      At all pertinent times, Defendant, MATELIC, was employed as a police officer for the DPD, a department of DETROIT, and was acting within the scope of her employment and under color of law.

10.     MATELIC, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated, in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

11.     Defendant, DETROIT, at all relevant times, was a municipal corporation organized under the laws of the State of Michigan.

12.     On June 5, 2013, members of the Detroit Police Department Narcotics Unit, including Lt. David Hansberry, Sgt. Bryan Watson, P.O. Amy Matelic, P.O.

3

Stephen Geelgood, and P.O. Larry Barnett, executed a search warrant at 15480 Piedmont St. in Detroit.

13.    The raid was based on an affidavit authored by WATSON earlier that day and approved by Wayne County Assistant Prosecutor Sara DeYoung.  The warrant was signed by 36th District Court Magistrate Sidney Barthwell Jr.

14.    The affidavit stated that a reliable confidential informant provided information that *"he/she was inside of 15480 Piedmont within the past 48 hours and observed large amounts of marijuana and cocaine being sold and stored at 15480 Piedmont."*

15.    The affidavit further indicated that WATSON had personally conducted surveillance at the location on June 4, 2013, and *"observed three (3) suspected buyers drive to the house, stay a short period of time, and then leave the location." Id.*

16.    WATSON claimed in that affidavit that based on his experience, such activity was consistent with illegal drug trafficking.

17.    WATSON further stated that DPD records further corroborated the confidential informant's information.  *"On 8-15-11, the Detroit Police Department Narcotics Unit executed a search warrant at 15480 Piedmont.  Lead (sic) by Sgt. Tucker, crew confiscated illegal drugs and weapons from Kaycee Smith placing him under arrest." Id.*

4

18.     The search warrant commanded that the house be searched, as well as

*"the seller B/M: Kaycee Ramon Smith, light complexion."*  The search warrant also

commanded the officers to *"seize, tabulate and make return, according to the law*

*the following property or items: . . . video/surveillance equipment used to protect*

*the trade . . . ."*

19.     The information in WATSON's affidavit was replete with false

statements and/or statements made with reckless regard for whether they were true.

Watson's affidavit also contained material omissions of facts; i.e., "lies by

omission."

20.     At the time WATSON swore out facts in support of the search

warrant, he knew the following:

a.     That there was no confidential informant who had been to the house
       within the past 48 hours to purchase drugs;

b.     That he had not conducted surveillance on June 4, 2013;

c.     That he had not seen three people enter the house to presumably
       purchase drugs;

d.     That Plaintiff had never been charged with a crime in connection with
       a drug raid on August 5, 2011.

21.     When the Narcotics Unit executed the raid, they found Plaintiff and

Kevin Sadler talking in the backyard.  They were subsequently arrested.  In the

house was Plaintiff's son, Kaycee Heard, 18, who lived at the location with Kevin

Sadler.

22.     HANSBERRY and WATSON directed officers, including MATELIC, to arrest Plaintiff and his co-defendant, Sadler.

23.     The DPD Narcotics squad claimed to have found drugs and weapons at the location.  Because Plaintiff was the legal owner of the property, he was arrested and charged with several crimes, including:

>   a.    Delivery/Manufacture of Narcotics (450-999g) (MCL 333.74012(A)(2);
>
>   b.    Delivery/Manufacture of Cocaine < 50g (MCL 333.74012(A)(4);
>
>   c.    Delivery/Manufacture of Marijuana (MCL 333.74012(D)(3);
>
>   d.    Felony Firearm (MCL 750.22B-A).

24.     During the raid, Lt. Hansberry was seen taking the surveillance equipment for the house to his vehicle and putting it in the trunk.

25.     At the time of the arrest and throughout the criminal proceedings, Plaintiff protested that he did not live at the house on Piedmont and that he had been out of state for two weeks attending the funeral of his mother, returning to visit his son less than thirty minutes before the raid.  He told Hansberry that the surveillance video would corroborate his story and lack of presence at the house.

26.     Hansberry intentionally or recklessly destroyed the surveillance equipment and later testified that he did not remove it from the house because Plaintiff told him it did not work.

27.    MATELIC subsequently filled out paperwork, including her Investigator's Report, seeking an arrest warrant.

28.    MATELIC's Investigator's Report, which was relied upon by the Wayne County Prosecutor's Office and a magistrate judge in approving and issuing the arrest warrant, contained false statements regarding the surveillance of the house and material omissions of facts regarding the discovery of drugs and the handgun.

29.    MATELIC knew the statements were false because fake surveillance and uncorroborated Confidential Informant tips were the norm for the Hansberry/Watson/Matelic/Geelgood drug crew and making false statements in warrants or Investigator's reports was not the first or only time for MATELIC.

30.    But for MATELIC's deliberate false statements and material omissions of facts, there would have been no probable cause for Plaintiff's continued detention.

31.    On April 10, 2014, a jury convicted KAYCEE SMITH of:

    *    Delivery/Manufacture of Narcotics (450-999g) (MCL 333.74012(A)(2);
    *    Delivery/Manufacture of Cocaine < 50g (MCL 333.74012(A)(4);
    *    Delivery/Manufacture of Marijuana (MCL 333.74012(D)(3);
    *    Felony Firearm (MCL 750.22B-A)

32.     On June 17, 2014, KAYCEE SMITH was given a sentence of a minimum of 135 months to 30 years for the drug convictions, as well as two additional years for the felony firearm charges.

33.     The unconstitutional conduct by Defendants, set forth below, was a direct and proximate cause of Plaintiff's wrongful conviction, injuries, and damages.

34.     No DPD officers or detectives had any training in the proper handling and reporting of exculpatory and/or impeachment evidence, or the requirement of candor and honesty when submitting reports to prosecutors or magistrates in support of warrants or when testifying in support of a probable cause finding.

35.     On and before June 5, 2013, the date of the illegal search warrant, DETROIT, by and through its final policymakers, had a custom and policy to authorize, condone, tolerate, and approve illegal and unconstitutional actions by Detroit Police Department officers and command staff.

36.     The illegal and unconstitutional actions and practices included but were not limited to:

    a.    Knowingly and deliberately fabricating evidence in search warrant affidavits to manufacture probable cause to search for illegal drug activity and strengthen a case for arrest and conviction;

    b.    Knowingly ratifying and not disciplining drug unit officers who had previously been found to have fabricated evidence or made false statements and/or

8

material omissions to support a search warrant; and

c.    Failing to train officers in the proper methods of obtaining evidence and being candid and honest in search warrant affidavits and testimony before judges in hearings to determine probable cause, all of which were standard functions for officers in the DPD Drug Unit; and,

d.    Other acts that will become evident during discovery.

37.    Defendant, DETROIT, through its final policymakers, further maintained a custom and policy of failing to adequately train, supervise, and/or discipline officers concerning proper and constitutionally adequate evidence collection, analysis, and disclosure, including their duty not to fabricate evidence and their affirmative duty to disclose apparent exculpatory and impeachment evidence.

38.    DETROIT's customs and policies, set forth above, demonstrated deliberate indifference to the constitutional rights of its citizens, including KAYCEE SMITH, and were the moving force behind the individual Defendants' constitutional violations.

39.    The policies, customs and practices of Defendant, DETROIT; i.e., "*Monell*" violations, set forth herein, were the moving force behind the individual Defendants' constitutional violations.

40.    DETROIT's *Monell* violations were a direct and proximate cause of Plaintiff's injuries and damages, as they caused the individual defendants to think

that they could act with impunity, given the unwritten policy and custom of tolerance for lies, half-truths, and deliberate or reckless omissions of material facts sup-porting search warrant affidavits to manufacture probable cause for an otherwise illegal search.

41.    The above-stated customs and/or practices had existed for years in the DPD Narcotics Section, as evidenced in the felony convictions of Sgt. David Hansberry and Bryan Watson, and the discovery of sweeping corruption within the unit that subsequently caused Chief James Craig to disband the Narcotics Section in 2014.[1]  The Narcotics Section was simply re-branded as the Major Violators Section; the name changed but the illegal tactics remained the same.

## POST-CONVICTION DEVELOPMENTS

42.    In 2018, following years of unsuccessful appeals, Plaintiff's criminal case was investigated by the recently-formed Wayne County Conviction Integrity Unit ("CIU"), which undertook a fresh look at the case.

43.    New evidence uncovered by the CIU resulted in the Wayne County Prosecutor's Office vacating Plaintiff's conviction and dismissing criminal charges against him.

---

[1]    https://www.detroitnews.com/story/news/local/detroit-city/2019/12/12/detroit-police-chief-longstanding-culture-drug-unit-corruption/4410031002/

44.     As a result of the newly-discovered evidence, the CIU submitted the case to Wayne County prosecutor, Kym Worthy.  Prosecutor Worthy agreed that KAYCEE SMITH was factually innocent of these crimes and agreed to a full and complete exoneration.

45.     Criminal charges were dismissed against Plaintiff on November 14, 2018.

46.     Due to the misconduct of Defendants, as set forth below, Plaintiff suffered the following injuries and damages:

    a.     Suffering a deprivation of liberty by being wrongfully arrested prosecuted and wrongfully convicted, spending over four years behind bars;

    b.     Severe emotional distress for the period from his arrest to the present, including, but not limited to: the emotional distress of being charged with numerous felonies the Defendants knew he did not commit and for which he could serve decades in prison if convicted;

    c.     Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

    d.     Fright, shock, indignity, humiliation, outrage, indignity and embarrassment of being wrongfully arrested;

    e.     Loss of employment;

    f.     Having to pay significant sums of money for attorneys to fight the criminal case;

    g.     Many of Plaintiff's injuries and damages are likely to be permanent;

h.      Other damages which may be revealed through discovery.

## COUNT I
## 4th AMENDMENT "FABRICATION
## OF EVIDENCE" BY DEFENDANT WATSON

47.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

48.     At all times, Plaintiff had a constitutional right, secured by the 4th Amendment, not to be seized and deprived of liberty as a result of fabrication of evidence by a government officer acting in an investigative capacity. *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019) ("For example, a fabricated search warrant affidavit, used to obtain evidence later shown to a jury, can form the basis of a fabrication-of-evidence suit.").

49.     Plaintiff's constitutional right to be free from arrest and prosecution based upon fabrication of evidence by a police officer acting in order to manufacture probable cause for a search and seizure was clearly established before April 27, 2017. *Jackson*, 925 F.3d at 825 (6th Cir. 2019) (fabrication of evidence claim clearly established in 1975).

50.     WATSON deliberately and knowingly fabricated evidence in order to manufacture probable cause for a search warrant. WATSON's fabrication of evidence included falsely reporting surveillance had been conducted at the subject

house when it had not been conducted at all.

<u>**COUNT II**</u>
<u>**4TH AMENDMENT MALICIOUS PROSECUTION**</u>
<u>**BY DEFENDANTS WATSON AND MATELIC**</u>

51.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

52.    At all times, Plaintiff had a constitutional right, secured by the 4th Amendment, not to be seized and deprived of liberty as a result of fabrication of evidence and knowingly or recklessly-made false statements or material omissions by a police officer in order to manufacture probable cause.

53.    Defendant, WATSON, influenced or participated in the initiation of criminal prosecution when he deliberately and knowingly fabricated evidence in his search warrant affidavit, which was material to a finding of probable cause.

54.    But for WATSON's fabrication of evidence and deliberate false statements and material omissions, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment. *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

55.    Defendant, MATELIC, influenced or participated in the initiation of

13

criminal prosecution when she deliberately and knowingly fabricated evidence and made false statements and material omissions in her Investigator's Report, which was material to a finding of probable cause.

56.     But for MATELIC's fabrication of evidence and deliberate false statements and material omissions, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment. *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2017) ("The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person."). *See also Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 267; 457 L.Ed.2d 667 (1978).

57.     Plaintiff's cause of action for federal malicious prosecution became complete when criminal charges were dismissed on November 14, 2018.

58.     Plaintiff's constitutional right to be free from illegal seizure and continued detention without probable cause based upon fabrication of evidence and false statements or material omissions by a government officer acting in an investigative capacity in order to manufacture probable cause was clearly established before June 1, 2017.  *See Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

## COUNT III
## *"BRADY"* VIOLATIONS BY DEFENDANT HANSBERRY

59.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

60.    At all times, Plaintiff had constitutional right of due process, guaranteed by the 14th Amendment, to be free from police officers not disclosing to the prosecutor material exculpatory and/or impeachment evidence.

61.    Defendant, HANSBERRY, knowingly violated his unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by failing to tell the prosecutor the following:

> a.    The fact that he had been under investigation for illegally robbing and extorting drug dealers and customers for his own personal benefit since 2009, as was revealed in the criminal trial that sent him to prison;

> b.    The fact that he took Plaintiff's surveillance equipment from his home, pursuant to the bogus search warrant, and destroyed the tape that showed Plaintiff had not been to his house for several days prior to June 5, 2013;

> c.    The fact that he knew there had been no surveillance of Plaintiff's house and that the facts set forth in WATSON's search warrant affidavit were completely made up;

> d.    Other exculpatory and impeachment evidence that will be revealed during discovery.

62.     Defendant's deliberate and knowing failure to disclose the above-referenced evidence to the prosecutor resulted in material exculpatory and impeachment evidence not being turned over to Plaintiff's defense counsel, in violation of the State's *Brady* obligations.

63.     HANSBERRY's *Brady* violations resulted in Plaintiff not receiving a fair trial, described as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had HANSBERRY disclosed the *Brady* evidence, there would have been no arrest, much less a conviction.  A re-trial that included the *Brady* evidence would result in a directed verdict or acquittal.

64.     The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

65.     Plaintiff's right to be provided with material exculpatory and impeachment evidence ("*Brady*" evidence), was clearly established before June 5, 2013.  *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuits recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.")

## <u>COUNT IV</u>
## <u>*"BRADY"* VIOLATIONS BY DEFENDANT WATSON</u>

66.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

67. At all times, Plaintiff had constitutional right of due process, guaranteed by the 14th Amendment, to be free from police officers not disclosing to the prosecutor material exculpatory and/or impeachment evidence.

68. Defendant, WATSON, knowingly violated his unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by failing to tell the prosecutor the following:

   a. The fact that he had been under investigation for illegally robbing and extorting drug dealers and customers for his own personal benefit since 2009, as was revealed in the criminal trial that sent him to prison;

   b. The fact that he knew HANSBERRY took Plaintiff's surveillance equipment from his home, pursuant to the bogus search warrant, and destroyed the tape that showed Plaintiff had not been to his house for several days prior to June 5, 2013;

   c. The fact that he knew there had been no surveillance of Plaintiff's house and that the facts set forth in the search warrant affidavit were completely made up;

   d. Other exculpatory and impeachment evidence that will be revealed during discovery.

69. WATSON's deliberate and knowing failure to disclose the above-referenced evidence to the prosecutor resulted in material exculpatory and impeachment evidence not being turned over to Plaintiff's defense counsel, in violation of the State's *Brady* obligations.

70.     WATSON's *Brady* violations resulted in Plaintiff not receiving a fair trial, described as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had WATSON disclosed the *Brady* evidence, there would have been no arrest, much less a conviction.  A re-trial that included the *Brady* evidence would result in a directed verdict or acquittal.

71.     The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

72.     Plaintiff's right to be provided with material exculpatory and impeachment evidence ("*Brady*" evidence), was clearly established before June 5, 2013.  *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuits recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.")

## COUNT V
## *"BRADY"* VIOLATIONS BY DEFENDANT MATELIC

73.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

74.     At all times, Plaintiff had constitutional right of due process guaranteed by the 14th Amendment, to be free from police officers not disclosing to the prosecutor material exculpatory and/or impeachment evidence.

18

75.    Defendant, MATELIC, knowingly violated her unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by failing to tell the prosecutor the following:

      a.    The fact that her Investigator's report, which contained the basis for the issuance of an arrest warrant, contained knowingly-made false statements and reckless omissions of material facts;

      b.    The fact that she knew HANSBERRY took Plaintiff's surveillance equipment from his home, pursuant to the bogus search warrant, and destroyed the tape that showed Plaintiff had not been to his house for several days prior to June 5, 2013;

      c.    The fact that she knew there had been no surveillance of Plaintiff's house and that the facts set forth in the search warrant affidavit were completely made up;

      d.    Other exculpatory and impeachment evidence that will be revealed during discovery.

76.    MATELIC's deliberate and knowing failure to disclose the above-referenced evidence to the prosecutor resulted in material exculpatory and impeachment evidence not being turned over to Plaintiff's defense counsel, in violation of the State's *Brady* obligations.

77.    MATELIC's *Brady* violations resulted in Plaintiff not receiving a fair trial, described as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had MATELIC disclosed the *Brady* evidence,

there would have been no arrest, much less a conviction.  A re-trial that included the *Brady* evidence would result in a directed verdict or acquittal.

78.     The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

79.     Plaintiff's right to be provided with material exculpatory and impeachment evidence ("*Brady*" evidence), was clearly established before June 5, 2013.  *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuits recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.")

<u>**COUNT VI**</u>
<u>**DEFENDANT, CITY OF DETROIT'S, "*MONELL*" LIABILITY**</u>

80.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

81.     Defendant, DETROIT, created policies, practices and customs, as set forth above, which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendants' violations of Plaintiff's constitutional rights.

82.     As a direct and proximate result of the individual Defendants' willful violation of Plaintiff's constitutionally-protected rights, KAYCEE SMITH was seized without probable cause, charged with crimes he did not commit, wrongfully

convicted and deprived of his liberty, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, KAYCEE SMITH, prays for all damages allowed by law, jointly and severally as to all Defendants, costs and reasonable attorney fees pursuant to 42 U.S.C. §1920 and 42 U.S.C. §1988, respectively, and such other and further relief as appears just and proper.

Respectfully submitted,

MUELLER LAW FIRM

*s/Wolfgang Mueller*
WOLFGANG MUELLER
Attorney for Plaintiff
41850 W. Eleven Mile Rd., Ste. 101
Novi, Michigan 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
(P43728)

Dated: October 15, 2020

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial in the above-captioned matter.


*s/Wolfgang Mueller*
MUELLER LAW FIRM
Attorney for Plaintiff
41850 W. 11 Mile Road, Ste. 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com
(P43728)

Dated: October 15, 2020